Opinion of the Court.
Pringle bought of Samuel, a small farm, at the price of one thousand dollars, payable in two instalments. The first, of five hundred dollars, he paid, and a part of the second, which was the sum of five hundred and thirty dollars, the thirty being included for interest during the year next previous to its becoming due. Samuel brought suit to coerce the payment of the last instalment, and recovered judgment. To be relieved against this judgment, Pringle filed his bill, and obtained an injunction, which, on a final hearing, was dissolved, and his bill dismissed ; to reverse which decree, he has prosecuted this writ of error with supersedeas.
The equity set up is, that Samuel, during the negociation, represented the quantity of land sold, to be fifty acres, and that it was ascertained to be within a half or three quarters of an acre of that quantity, by an experienced surveyor; and that, believing these representations, he bought the land at the rate of twenty dollars per acre : That he had since discovered, that it contained not much more than half that quantity, and that Samuel well knew it; for he had bought it for twenty-five acres, and according to that quantity had listed it for taxation for several years previous to the sale, and thus had committed a fraud in the sale. He prays relief as to the deficit, and a confirmation of the contract, as to the residue.
The defendant denies positively, any such representation about the quantity ; alleges that he did not know or state what it was, and that the sale was one in gross and not by the acre. Samuel gave his bond to convey the land when the last payment was made. This bond does not express the quantity ; but binds Samuel to convey by certain metes and bounds. The deed held by Samuel from his vender, in like manner, is silent as to the quantity. The accurate quantity ascertained by a survey in this suit, is thirty-seven acres and one half.
1. Two witnesses were present at the sale and attested the writings. Of these, one is very positive, that the quantity was represented to be fifty acres, and alleges, that, his mind was convinced that was the true quantity, by the representations of Samuel before the writings were signed, and his testimony *45 strongly supports the bill. The other speaks more strongly of the sale being in gross and not by the acre ; but his testimony is nearly if not quite as strong on the point of misrepresentation. He deposes, also, that he was first told by Samuel of his intention to sell, and was told by him the quantity was fifty acres ; that he communicated this information with the number of acres to the plaintiff, and then in a few days, the plaintiff and himself attended and made the purchase; so that through the instrumentality of the witness, the plaintiff went with the expectation of procuring a farm of that quantity. The same witness also testifies, that he drew the writings, and from the field notes, he attempted, by the direction of the other witness, he himself not being a surveyor, to make a calculation, which resulted in about the quantity now ascertained; but the defendant alleged, that Voorhies the surveyor, had made it within the fraction of an acre of fifty acres, and of course, he, the witness, gave up his calculation, supposing Voorhies more competent to ascertain the true quantity. It is further shown, that just before the writings were signed, the plaintiff expressed a doubt about the quantity, and in reply the defendant insisted that the quantity was fifty, and told the plaintiff to measure it if he doubted. This reply carried with it such an air of confidence, as was calculated to remove the doubts of the plaintiff, and silence further inquiry, which was the effect, produced by it. It also shows that the quantity was taken into the estimate, in making the contract. The testimony is, therefore, sufficient to overrule the answer of the defendant, when tested by the rules adopted in courts of equity. It is also clearly shown, that the defendant did buy the land at the quantity of twenty five acres, and listed it at only that quantity, while he held it. So that we cannot doubt of the fact, that the defendant estimated the tract at twenty, five acres himself, and was sensible it was less than fifty ; and that he did represent it to contain fifty, and that representation had a strong influence on the mind of the plaintiff in making the contract.
The fact of a sale being made of a tract of land in gross, instead of by the acre, is no bar to relief, where the vender had knowingly and fraudulently represented the tract to contain considerably more than it did.
*45 2. But it is contended, as the sale was in gross, and not by the acre, no relief for a deficit ought to be given, and that the quantity is too small to authorise the interposition of the chancellor. It is true, that where *46 the quantity deficient bears not a great proportion to the whole tract, or there is evidence that the party selling has shown a disposition to let the surplus go with the reputed quantity, or the buyer to disregard a deficit, the chancellor, as has been repeatedly held by this court, will not interfere in favor of either, and overhale the contract. But where the quantity is equal, as it is here, to one fourth of the whole, it cannot be said to be too inconsiderable to merit the interposition of the chancellor ; especially, in a case where the vender knew otherwise, and still made use of the assertion of a greater quantity, to influence the contract and induce the purchase. This principle, at all events, will apply where the contract is executory, as was decided by this court in the case of Shelby and Roberts vs. Smith’s heirs, 2 Marsh. 504. In that case, relief was given on account of evident mistake of both parties. Here, we cannot give the conduct of the plaintiff so mild an appellation. To his vender when buying, and his government requiring public dues, he represented the quantity differently ; and Voorhies, whose testimony is in the cause, has no recollection of ever having surveyed the tract, or fixing the quantity higher than twenty, five acres.
That the deficiency was of a small quantity, is no bar to relief, if the tract was so small that the deficiency bears a considerable proportion to the whole tract.
The maxim, caveat emptor, is not to be applied so as to protect the vendor in knowingly defrauding the vendee as to the quantity of the land sold.
3. It is also contended, that the maxim, caveat emptor, applies and bars relief; that the plaintiff was as much bound to ascertain the true quantity, as the defendant, and that by admeasurement he could have discovered the truth of the fact, and for that reason he is not entitled to sustain his bill. We do not remember any case, where the maxim quoted has been used by the chancellor, in such manner as to compel him to shut his ears against false representations, or to give latitude to a vender of real estate to slate facts untruly, without any responsibility. This maxim will, and ought to have more influence in the sale of real estate, than that of a chattel. The former, from its nature, is open to a less precarious inspection as to quality, and from its permanent and inanimate character, cannot hide many defects, which may be concealed in a chattel. For instance, misrepresentations of its fertility and productions, or even the validity of its title, may be more easily detected ; but to ascertain its quantity, requires a greater skill, and a larger proportion of science, than, even in this age, is acquired by a ma *47 jority of men. Almost every rational man may be capable of deciding on the quality of land, while but few can ascertain its quantity with accuracy. This is ascertained by a surveyor and a mathematical instrument ; and his decision determines the quantity expressed in most of our title papers. In this matter, therefore, especially when title papers, as in this case, are silent, each vender ought to be bound to speak truly. Had the vender simply stated that he had bought his tract for twenty-five acres, and had always listed it at the same quantity, but he believed it now to be somewhat more, instead of the broad assertion that it contained fifty, and his quoting the authority of a surveyor to support it, whose authority he never had, it is easy to perceive that it might have produced a different result.
Where the vender has conveyed to a third person, with a view of keeping the land from being sold under executions against himself and enabling him to convey to the vendee when payment shall be made of the purchase money, the person to whom it is so conveyed, is a necessary party, unless he shall by deed acknowledged according to law, have conveyed to the vendee.
We, therefore, conceive that the plaintiff has shown himself entitled to relief. This relief ought to be fixed in the same proportion which the whole price bears to fifty acres, and will entitle the complainant to a perpetual injunction on two hundred and fifty dollars of the principal, and fifteen dollars of the interest included in the note, together with all the accruing interest on two hundred and sixty five dollars of the note since it became due.
4. But an amended bill is filed, suggesting that Samuel, in fraud of his contract, had conveyed away the title, to a certain David Graham, who knew of the plaintiff’s contract, and who paid no consideration, and Graham is named as a defendant; and a deed, properly recorded, is produced, from Samuel and wife to Graham. To this amended bill, Samuel responds, that he had conveyed to Graham for the purpose of preserving the title for the complainant, there being executions against himself, which might have taken it from the complainant; that Graham was willing to convey it to the complainant, and had done so; and he exhibits a deed from Graham to the complainant, signed by Graham, but not acknowledged or proved. The chancellor ought to finish this whole transaction, while it is before him. No subpoena is produced, executed on Graham ; but as none of the process is copied in the record, such process may exist. The court below, therefore, if Graham is properly before it, ought to direct such conveyance to be made to the com *48 plainant, as will secure him in both the title and warranty of Samuel, after the purchase money is settled. Or, if Graham is not before the court, he ought to be first brought before it, for that purpose, or to show cause to the contrary.
The decree must, therefore, be reversed, and the cause remanded for new proceedings, not inconsistent with this opinion.